# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

VICTOR MANUEL GARCIA,

       Defendant-Appellant.

UNPUBLISHED
June 27, 2017

No. 331244
Wayne Circuit Court
LC No. 15-006074-03-FH

---

Before: JANSEN, P.J., and MURPHY and BORRELLO, JJ.

PER CURIAM.

Defendant, appeals as of right his conviction of unlicensed residential builder, MCL 339.601, as amended by 2008 PA 169.[1] The trial court sentenced to 18 months' probation, and $6,300 in restitution. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This appeal arises from two brothers retaining defendant, his sister Manda Garcia-Keezer, and defendant's brother-in-law John Vardy, to perform repairs on a home in the City of Detroit.[2] While interviewing contractors, the victim met defendant and Vardy at the home which required extensive repairs. The victim testified that defendant showed him a portfolio of photographs of his work, and defendant told him that he had been a licensed builder "since he was 20 years old." Defendant also showed the victim photographs of his prior work from his cellphone. According to the victim, it "[a]bsolutely" mattered that defendant stated that he was a licensed builder because "payment was supposed to be up front. If he was not a licensed builder that would make him a nobody off the street asking me for $8700.00 dollars [sic]." Ultimately, the discussion turned to the question of price, and an agreement was reached: the victim would pay defendant, Vardy, and Garcia-Keezer $35,000 for their labor to "fix all that needed to be fixed in the house and bringin[g] it up to the local standards."

---

[1] The current version of MCL 339.601 came into effect on April 4, 2017. See 2016 PA 412.

[2] Vardy pleaded guilty to false pretenses more than $20,000, but less than $50,000, and Garcia-Keezer pleaded guilty to unlicensed residential builder.

The victims paid defendant and his relatives in advance. However, shortly after payment had been tendered, work ceased on the home. When the victim tried to contact defendant, he was told by defendant that he worked for Vardy and that the victim should contact Vardy because defendant had ceased working for Vardy. There was also evidence presented at trial that defendant demanded more money for the work he was doing on the home. Eventually an agreement was reached whereby defendant received $6,300 for his work on the house. After the defendant, Vardy and Garcia-Keezer failed to complete the repairs after being paid, the victims contacted the police who discovered that none of the individuals working on the home were licensed contractors. At trial defendant was convicted as indicated above, but acquitted of charges of false pretenses over $20,000 but less the $50,000 in violation of MCL 750.218(5)(a).

At sentencing, the trial court inquired of defendant what the total amount of money he received from Vardy and Garcia-Keezer. Defendant stated that he had received $6,300. That was the amount of restitution the trial court ordered. This appeal then ensued.

## II. ANALYSIS

On appeal, defendant argues that the trial court abused its discretion when it ordered him to pay $6,300 in restitution because there is no causal connection between his conduct and the harm suffered by his victims. "'The proper application of . . . statutes authorizing the assessment of restitution at sentencing is a matter of statutory interpretation, which we review de novo.'" *People v Corbin*, 312 Mich App 352, 361; 880 NW2d 2 (2015), quoting *People v McKinley*, 496 Mich 410, 414-415; 852 NW2d 770 (2014). "We review a court's calculation of a restitution amount for an abuse of discretion, and its factual findings for clear error." *Corbin*, 312 Mich App at 361 (citations omitted). "The trial court abuses its discretion when its outcome falls outside the range of principled outcomes." *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014), citing *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). "A trial court may abuse its discretion by blurring the distinction between a civil remedy for damages and the criminal penalty of restitution." *Id.*, citing *People v Orweller*, 197 Mich App 136, 140; 494 NW2d 753 (1992). "A finding is clearly erroneous if, after reviewing the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Coomer*, 245 Mich App 206, 219; 627 NW2d 612 (2001), citing *People v Mendez*, 225 Mich App 381, 382; 571 NW2d 528 (1997).

Crime victims have a right to restitution under the 1963 Michigan Constitution. Const 1963, art 1, § 24. "MCL 780.766(2) governs restitution and states that a defendant must 'make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction . . . .'" *People v Bryant*, ___ Mich App ___, ___; ___ NW2d ___ (2017) (Docket No. 328512); slip op at 2. See also MCL 769.1a(2) (providing that "when sentencing a defendant" a trial court "shall order" a defendant to "make full restitution to any victim of defendant's course of conduct that gives rise to the conviction . . . ."). Under MCL 780.767(1), when a trial court determines the amount of restitution to order a defendant to pay it "shall consider the amount of the loss sustained by any victim as a result of the offense." In *McKinley*, the Michigan Supreme Court held that " '[t]he offense' in MCL 780.767 can only refer to the offense of which the defendant was convicted, because it is that 'offense' that makes him subject to being ordered to pay restitution in the first place." *McKinley*, 496 Mich at 421. Additionally, the *McKinley* Court

held that "MCL 780.766(2) requires a direct, causal relationship between the conduct underlying the convicted offense and the amount of restitution to be awarded." *Id*.

"As noted by our Supreme Court in *McKinley*, [MCL 780.767(1)] instructs a sentencing court to 'consider the amount of the loss sustained by any victim as a result of the offense.' " *Corbin*, 312 Mich App at 369, citing *McKinley*, 496 Mich at 421. In *Corbin*, this Court held that MCL 780.767 "permits an award only for losses factually and proximately caused by the defendant's offense; nothing in the text or structure of the statute suggests otherwise." *Corbin*, 312 Mich App at 369. "The concept of factual causation is relatively straightforward. In determining whether a defendant's conduct is a factual cause of the result, one must ask, 'but for' the defendant's conduct, would the result have occurred? Proximate cause, too, is a standard aspect of causation in criminal law and the law of torts. For a defendant's conduct to be regarded as a proximate cause, the victim's injury must be a 'direct and natural result' of the defendant's actions." *Id*. (citations and quotation marks omitted).

The language contained in MCL 339.601(1) which was in effect at the time of defendant's offense, provided that a "person shall not engage in or attempt to engage in the practice of an occupation regulated under this act or use a title designated in this act unless the person possesses a license or registration issued by the department for the occupation." Additionally, former MCL 339.601(8) also provided that "[a]ny violation of this act shall include a requirement that restitution be made, based upon proofs submitted to and findings made by the trier of fact as provided by law."

The trial court, relying "on the testimony and verdict of the jury," ordered defendant to pay $6,300 in restitution because that was the amount he received in payment for a house repair project that he was not licensed to perform. The trial court also noted that in addition to receipt of the money, testimony also revealed that prior to abandoning the project, defendant left the majority of the work for which he had been contracted unfinished. On appeal defendant contends that the trial court's restitution award should be vacated because there is no causal connection between defendant's conduct and the "damages the jury found him not guilty of causing."

We begin our analysis by noting that defendant's argument sounds in contract rather than criminal law. The crux of defendant's argument is that he is entitled to the $6,300 because he did $6,300 worth of work on the home. Defendant's argument lacks merit because he fails to include the fact that testimony revealed that none of the people hired to perform work on the home would have been hired had it been known that they were not licensed contractors. Defendant's argument also seeks to negate testimony by the victim that defendant held himself out as a licensed contractor. In fact, the victim testified that defendant told him he was a licensed contractor. Therefore, it is fairly obvious that "but for" defendant's assertions and those of the others involved in this case, defendant would not have been hired had he truthfully explained that he was not a licensed contractor. Hence, contrary to defendant's assertions, there is a causal connection between defendant's conduct as an unlicensed builder and the payment he received to perform a building project that he was not licensed to perform.

We further note that the jury convicted defendant of former MCL 339.601(1), which was in effect at that time. Therefore it found that defendant "engage[d] in or attempt[ed] to engage in

the practice of an occupation regulated under this act or use a title designated in this act" without a license. Former MCL 339.601(1). During trial and at sentencing, defendant admitted that he had received a total of $6,300 in payment for working on the house. The victims testified that they would not have entered into a contract with defendant if they had known he did not have a license. Accordingly, defendant was the cause in fact of the harm to the victims. If defendant had not stated that he was a licensed builder, and if he had not worked as an unlicensed builder, then defendant would not have received $6,300. Further, the monetary harm the victims suffered was a direct and natural result of defendant's unlicensed work on the house, and his representation that he was a licensed residential builder. Therefore, there was a causal connection between defendant's conduct and the trial court's restitution order.

Defendant also argues that former MCL 339.601 is a statute that only pertained to licensure and did not pertain to "damages due to obtaining money falsely or [] building a structure improperly." Defendant has failed to take note of former MCL 339.601(8), which expressly provided that "[a]ny violation of this act shall include a requirement that restitution be made, based upon proofs submitted to and findings made by the trier of fact as provided by law." And as noted above, the trial court's order of restitution complies with MCL 780.767 because the victims' losses were factually and proximately caused by defendant's offense.

Finally, defendant contends that there is no causal connection between his conduct as an unlicensed residential builder and "the damages the jury found him not guilty of causing." While it is true that defendant was acquitted of one charge, that fact does not have any bearing on the trial court's determination that there was a causal connection between defendant's conduct as an unlicensed residential builder and the harm suffered by the victims. Therefore, the trial court did not abuse its discretion when it ordered defendant to pay restitution.

Affirmed.

/s/ Kathleen Jansen
/s/ William B. Murphy
/s/ Stephen L. Borrello

-4-